UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Plaintiff,

v.                                                    No. 19-191 MV/KK

SHANNON SZUSZALSKI, as personal representative
for the ESTATE OF LINDA BARAGIOLA,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Renewed Motion for Summary Judgment [Doc. 27]. The Court, having considered the motion and relevant law, finds that the motion is well-taken and will be granted.

### BACKGROUND

On September 28, 2017, Linda Baragiola went to check on her neighbor's home after an alarm had gone off. Doc. 1 ¶ 6. Sandoval County Sheriff's Deputies also responded to the alarm. *Id.* ¶ 7. As Sandoval County Deputy Rudy Fields was leaving the area, he backed over Ms. Baragiola, who suffered fatal injuries as a result. *Id.* ¶¶ 8-9.

Ms. Baragiola owned an automobile insurance policy with Plaintiff State Farm Mutual Automobile Insurance Company (the "Policy"), which provided uninsured and underinsured motorist coverage with limits of $250,000 per person and $500,000 per accident. Doc. 16 at 3. In relevant part, the Policy limited recovery for bodily injury resulting from an accident with an

1

"underinsured" motorist to $250,000 less all payments made by any person or organization held legally liable for causing the bodily injury.[1]  *Id.*

On August 22, 2018, Defendant Shannon Szuszalski, as personal representative for the Estate of Ms. Baragiola, sent Plaintiff a demand letter seeking to collect under the underinsured motorist provision of the Policy.   Doc. 16-1.   Plaintiff responded on December 20, 2018, stating its position that the Estate could not recover under the Policy, as the Estate would be able to collect $400,000, the maximum allowed under the New Mexico Tort Claims Act[2], from the Sandoval County Sheriff's Office as a result of the accident, thus reducing to less than zero the amount recoverable under the underinsured motorist provision of the Policy (which limited recovery to $250,000 less any amount paid by the individual or organization responsible for the accident).   Doc. 1-6.   Defendant replied on February 1, 2019, indicating that it disagreed that

---

[1] The Policy provides as follows:

a.  The most we will pay for all damages resulting from bodily injury to any one insured injured in any one accident, including all damages sustained by other insureds as a result of that bodily injury is the lessor of:

(1)  the limit shown under "Each Person" reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury; or

(2)  The amount of all damages resulting from that bodily injury reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury.

Doc. 27-2.

[2] The New Mexico Tort Claims Act provides that, "in any action for damages against a governmental entity or a public employee while acting within the scope of the employee's duties as provided in the Tort Claims Act, the liability shall not exceed . . . the sum of four hundred thousand dollars ($400,000) to any person for any number of claims arising out of a single occurrence for all damages other than real property damage and medical and medically related expenses as permitted under the Tort Claims Act."   N.M. Stat. Ann. § 41-4-19(A)(3) (1978).

any evidence existed that it would be able to collect $400,000 – or any amount – from Fields or the Sandoval County Sheriff's Office, and that in the absence of any such set-off, it was entitled to recovery under the underinsured motorist provision of the Policy.   Doc. 1-7.

Based on this disagreement, on March 7, 2019, Plaintiff commenced this action, seeking a declaratory judgment that Plaintiff "has no current obligation to provide uninsured [or] underinsured motorist coverage to Linda Baragiola, deceased, in any amount."   Doc. 1 at 5. Thereafter, on October 7, 2019, Plaintiff filed its original motion for summary judgment, arguing that the undisputed facts demonstrate that it is entitled as a matter of law to a declaratory judgment in its favor.   Doc. 16.   Defendant opposed the motion.   Doc 18.

In a Memorandum Opinion and Order entered on September 28, 2020, the Court denied Plaintiff's original motion.   Doc 26.   In reaching its decision, the Court explained that the evidence submitted by Plaintiff, namely, a document entitled the "New Mexico Association of Counties Multi-Line and Law Enforcement Pools, Member Coverage Agreement January 1, 2017" ("MCA"), did not resolve the issue of whether "any person or organization who is or may be held legally liable" for Ms. Baragiola's fatal bodily injury has made, or intends to make, payments for damages resulting from the accident at issue here or what the sum of any such payments might be.   *Id.* at 5.   Accordingly, the Court found that the submitted portion of the MCA, without more, fell short of establishing that the funds available under the Policy have been offset by *any* payments, let alone by payments that would reduce Plaintiff's obligation to nothing.   *Id.*   The Court did, however, note Defendant's apparent concession that, if payments for damages resulting from Ms. Baragiola's bodily injury were *in fact* made by or on behalf of Deputy Fields and/or Sandoval County, and if those payments were in the amount of $250,000 or

3

higher, then evidence of such payments would be sufficient to establish, as a matter of law, that Plaintiff has no obligation to Defendant under the Policy.  *Id.* (citing Doc. 18 at 6).

After entry of the Court's Opinion, on August 8, 2020, Defendant settled her case against Sandoval County for $400,000.  Doc. 27-3; Doc. 27-4.  Based on the undisputed evidence of this settlement, Plaintiff filed the instant renewed motion for summary judgment, asking the Court to find that Plaintiff is under no obligation to pay underinsured motorist benefits to Defendant under the Policy.  Doc. 27.  While acknowledging both the terms of the Policy and her settlement with Sandoval County, Defendant nonetheless opposes the motion.  Doc. 28.

## STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant has the initial burden of establishing that there is an absence of evidence to support the non-movant's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the movant meets this burden, the non-movant must come forward with specific facts, supported by admissible evidence, that demonstrate the existence of a genuine dispute.  *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1526 n. 11 (10th Cir. 1992).  The court "construe[s] the factual record and the reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005).

## DISCUSSION

The undisputed facts demonstrate both that there is $250,000 available in underinsured motorist coverage under the Policy, and that Defendant has settled with Sandoval County (on behalf of tortfeasor Fields) for $400,000.  Based on these undisputed facts, Plaintiff argues that, as a matter of law, Defendant's recovery of underinsured motorist coverage under the Policy is

4

completely offset by the amount recovered from Sandoval County, and as a result, Plaintiff is under no obligation to pay underinsured motorist benefits under the Policy.    The Court agrees.

The underinsured motorist provision of the Policy states that the maximum that Plaintiff will pay for all damages resulting from bodily injury is the lesser of the limit under each person ($250,000) or the amount of all damages resulting from that bodily injury "reduced by the sum of all payments for damages resulting from that bodily injury made by or on behalf of any person or organization who is or may be held legally liable for that bodily injury."   Doc. 27-2.   This provision tracks New Mexico law.    Specifically, an insurer's underinsured motorist "liability is calculated by the formula contained in [N.M. Stat. Ann.] Section 66-5-301(B) as explained by [the New Mexico] Supreme Court in *Schmick v. State Farm Mutual Automobile Insurance Co.,* 103 N.M. 216, 222, 704 P.2d 1092, 1098 (1985), and reaffirmed by the Court a number of times."    *Martinez v. Allstate Ins. Co.,* 946 P.2d 240, 243 (N.M. Ct. App. 1997).    In construing the underinsured motorist statute (Section 66-5-301(B)), the *Schmick* court stated:

> We observe that the Legislature, in defining an underinsured motorist, set the minimum and maximum on the amount an insured can collect from his underinsured motorist insurance carrier. *See* § 66–5–301(B).    Our statute provides a specific formula by which to compute whether one was underinsured and by what amount.    *Id.*    The formula is the criterion to be used in determining underinsurance benefits due and it defines the parameters within which recoveries must stay.    Therefore, an insured collects from his underinsured motorist carrier the difference between his uninsured motorist coverage and the tortfeasor's liability coverage or the difference between his damages and the tortfeasor's liability coverage, whichever is less.

704 P.2d at 1098.    Thus, the Section 66-5-301(B) offset, "referring to the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident, is [] to be subtracted either from the total of the insured's uninsured motorist coverage or from the insured's damages, whichever method produces the smaller result."    *Martinez,* 946 P.2d at 243 (citing *Schmick,* 704 P.2d at 1098).

5

Here, it is undisputed that the Policy limit is $250,000, an amount less than the amount of damages resulting from Ms. Baragiola's bodily injury. It is also undisputed that Sandoval County, on behalf of Fields, paid $400,000 for damages resulting from Ms. Baragiola's bodily injury. Thus, under both the statutory offset provision and the terms of the Policy, Plaintiff's obligation to pay underinsured benefits must be calculated by subtracting $400,000 from $250,000. As this leaves no amount owing, Plaintiff's liability is completely offset by the settlement paid by Sandoval County.

Defendant nonetheless insists that Plaintiff has not established as a matter of law that it has no liability under the Policy, arguing that the settlement paid by Sandoval County is not "bodily injury liability insurance" within the meaning of Section 66-5-301(B), and thus that the statutory offset and presumably, the Policy provision itself, are not applicable. Doc. 28 at 3. According to Defendant, Section 66-5-301(B) "is inapplicable to cases involving the [Tort Claims Act] or cases where the NMAOC pays a settlement from the counties pool of funds given to the NMAOC by its county members." *Id.* None of the cases cited by Defendant, however, supports this dubious contention.

First, Defendant cites to *Boradiansky v. State Farm Mut. Auto. Ins. Co.*, which addressed the question of whether the plaintiff, whose underinsured motorist policy limits exceeded the amount for which she settled her claim against a governmental defendant, which amount was less than the cap under the Tort Claims Act, was "legally entitled to recover underinsured motorist damages beyond the limits established by the Tort Claims Act." 156 P.3d 25, 30 (N.M. 2007). The court answered the question in the affirmative, concluding that "the cap in the Tort Claims Act is not a bar to Plaintiff's right to legally recover within the meaning of Section 66-5-301." *Id.* Nothing in the court's holding remotely suggests that a settlement

6

paid by a governmental entity, such as Sandoval County, is not subject to the statutory offset provision for purposes of determining an insurer's liability for underinsured motorist benefits. To the contrary, the settlement in *Boradiansky* was paid by a governmental entity and capped by the Tort Claims Act, just as was the settlement here.   The necessary implication from the *Boradiansky* court's holding (namely, that the formula set forth in statutory offset provision applies regardless of the Tort Claims Act cap) is that settlements made pursuant to the Tort Claims Act are to be offset when calculating an insurer's liability under Section 66-4-301(B).

Next, Defendant cites *Vasquez v. Am. Cas. Co. of Reading* for its repetition of the holding in *Boradiansky* that "a claimant is legally entitled to recover damages pursuant to the Uninsured Motorist statute in the context of an express policy exclusion and a limitation on damages in the Tort Claims Act."   89 P.3d 282, 286 (N.M. 2016).   Again, nothing in this statement suggests that the statutory offset provision does not apply to this case simply because the settlement against which Plaintiff seeks to offset its obligation was made by a governmental entity pursuant to the Tort Claims Act.[3]

Finally, Defendant cites to *Folz v. State*, in which the court held that the Tort Claims Act "'single occurrence' limit of $500,000 applies to the sum of damages caused by the runaway truck's successive and separate collisions with multiple vehicles."   797 P.2d 246, 249 (N.M. 1990).   Nowhere does the *Folz* court discuss the statutory offset provision, much less hold that such provision is inapplicable where, as here, a settlement is made by a governmental entity and capped by the Tort Claims Act.

---

3  Indeed, the issue before the court in *Vasquez* was the wholly unrelated question of whether "a worker injured in the course of employment by a co-worker operating an employer owned motor vehicle [is] a person 'legally entitled to recover damages' under his employer's uninsured/underinsured motorist coverage."   389 P.3d at 283.

In opposing Plaintiff's motion, Defendant essentially asks the Court to find that she is entitled to recover more than the maximum benefit for which Ms. Baragiola contracted through the Policy, and more than is permissible under the relevant statute. Defendant has provided no legally sound basis for this request, and thus no legally sound basis for the Court to deny summary judgment in Plaintiff's favor.

## CONCLUSION

The undisputed facts establish that Defendant has settled with Sandoval County (on behalf of tortfeasor Fields) for $400,000, which amount completely offsets the $250,000 in underinsured motorist coverage under the Policy. Plaintiff thus has established, as a matter of law, that it is entitled to a declaratory judgment that Plaintiff has no obligation to Defendant under the Policy.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. 16] is **GRANTED.**

DATED this 4th day of January 2021.

_____
MARTHA VÁZQUEZ
United States District Judge